* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant on *Page 2 
the date of the alleged accident.
3. The carrier liable on the risk is correctly named above.
4. Plaintiff was terminated from his employment with defendant in or around July 2007.
5. Plaintiff was assigned to C Crew during the time period in which plaintiff alleges that his June 2006 accident took place.
6. In 1995, plaintiff sustained a work-related injury to his right hip.
7. The following items were stipulated into evidence:
 a. Stipulated Exhibit No. 1 — Plaintiff's Medical Records (as reflected in Index to Exhibit).
 b. Stipulated Exhibit No. 2 — Form 18 (9/25/06), Form 18 (2/20/07), Form 19, Form 33, Form 33R, Form 61, Defendant's Answers to Plaintiff's Discovery, Plaintiff's Recorded Statement, Pulp Shift Summaries of Defendant from 6/1/06 to 6/3/06, Plaintiff's Answers to Defendant's Discovery, Employee Description of Injury completed on 7/5/06.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant as a digester washer operator during May and June 2006.
2. Plaintiff sustained a work-related injury to his right hip in January 1995 ("the 1995 Incident") while using a 30 lb air wrench to manually cap the digesters at defendant's *Page 3 
facility. As a result of the 1995 Incident, plaintiff presented to and received treatment from Cape Fear Memorial Hospital.
3. In the approximately eleven years between the 1995 incident and June 2006, plaintiff continued to experience pain in his right hip.
4. At some point in May or June 2006, a shutdown of defendant's facility occurred ("the 2006 Event") during which time plaintiff spent several hours manually unplugging a washer after noticing the washer was running low on water.
5. Plaintiff failed to report to Jack "Buck" Hall, the shift supervisor, that he was injured in any way as a result of the 2006 Event. Similarly, plaintiff failed to report to Randy Carroll, a fourth set washer operator, or William Brian Skinner, a washer second helper, both of whom were present during the 2006 Event, that plaintiff was injured in any way as a result of the 2006 Event.
6. Plaintiff failed to request permission from Mr. Hall to seek medical attention from defendant's on-site first aid facility following the 2006 Event. Had plaintiff requested permission from Mr. Hall to seek such medical attention, Mr. Hall was prohibited by defendant's company protocol from denying it to plaintiff.
7. Mr. Hall was required by defendant to fill out an accident report each time an employee of defendant reported an injury. No accident report was filled out pertaining to any alleged claim of injury arising out of the 2006 Event because plaintiff did not report any such injury to Mr. Hall.
8. Any employee of defendant, including plaintiff, was able to seek medical attention from defendant's on-site first aid facility without the prior permission of Mr. Hall or any other employee. *Page 4 
9. On June 8, 2006, plaintiff presented to Emily Murtha, FNP for Dr. Meyer of Wilmington Health Associates. Ms. Murtha noted that plaintiff had reported pain in his right hip and right knee that had been present for several months. Ms. Murtha further noted that plaintiff had reported that he received no known trauma to either his right hip or right knee.
10. On June 30, 2006, plaintiff presented to Dr. James Hundley of Wilmington Orthopaedic Group complaining of pain in his right low back, upper pelvis, neck, and shoulders. On plaintiff's New Patient Form, it was noted that plaintiff's complaints were not related to a workers' compensation claim.
11. On July 5, 2006, plaintiff completed an employee description of injury form in which he listed the date of his injury as January 22, 1995, and, in great detail, described the 1995 Incident and stated that it was the 1995 Incident from which his hip injury arose.
12. Also on July 5, 2006, plaintiff provided Julia Blake, a nurse at defendant's on-site first aid facility, with a note from Dr. Hundley stating that plaintiff was limited to performing office work only through August 15, 2006, as a result of the hip pain he was experiencing. At that time, plaintiff advised Ms. Blake that he had been diagnosed with hip spurs and arthritis and that the pain in his hip had been ongoing since the 1995 Incident. During this visit with Ms. Blake, plaintiff failed to mention any sort of injury arising from the 2006 Event.
13. Defendant was unable to accommodate plaintiff's office work only restrictions. Plaintiff was therefore unable to resume his regular position with defendant. Plaintiff applied for and was initially granted $800.00 in short-term disability benefits, which were later denied. Plaintiff applied for long-term disability and Social Security disability benefits, but both applications were denied.
14. On July 6, 2006, plaintiff presented to Dr. Mitch Meyer of FamMed complaining *Page 5 
of low back and neck pain. Dr. Meyer noted that plaintiff reported that the onset of plaintiff's pain was acute and had been occurring in a persistent pattern for eleven years. Nothing in Dr. Meyer's notes from this visit indicates that plaintiff's condition was caused or aggravated by the 2006 Event.
15. On July 12, July 21, and July 27, 2006, plaintiff returned to Dr. Meyer. Nothing in any record from any of these three visits suggests that plaintiff's hip or back condition was connected to the 2006 Event. Furthermore, at the July 27, 2006 visit, Dr. Meyer noted that plaintiff once again reported his pain had been occurring in a persistent pattern for eleven years.
16. On August 2, 2006, plaintiff presented to Dr. John Liguori, of Coastal Rehabilitation Medicine Associates, complaining of pain in his right hip, back, and shoulder. In his notes from this visit, Dr. Liguori stated that plaintiff reported that his right hip pain had started about ten years ago while plaintiff was at work. Dr. Liguori testified that his notes from this visit were likely dictated immediately after meeting with plaintiff when the information was fresh in his mind. Furthermore, Dr. Liguori stated that the only thing he and plaintiff talked about was an injury that happened about ten years earlier.
17. On August 9, 2006, plaintiff presented to Dr. Mark Harris and reported that he had had chronic right hip pain for the past ten years. Nothing in Dr. Harris's notes from this visit indicates that plaintiff's condition was caused or aggravated by the 2006 Event.
18. On August 31 and September 28, 2006, plaintiff returned to Dr. Harris. Nothing in any record from either of these two visits suggests that plaintiff's hip or back condition was connected to the 2006 Event.
19. On September 25, 2006, plaintiff completed a Form 18 in which he stated that he sustained injuries to his right hip and lower back on May 22, 2006 while performing his current *Page 6 
job duties for defendant. This Form 18 was the first notice given by plaintiff to defendant of plaintiff alleging that he had suffered an injury at any point during 2006. Prior to the filing of this Form 18, defendant was not aware that plaintiff alleged he had sustained such an injury. Plaintiff later stated that his use of the date May 22, 2006 was merely an estimate of the date of the 2006 Event and was made without verifying his shift card.
20. On October 6, 2006, plaintiff visited Dr. Jon Miller, of Atlantic Orthopedics, at which time plaintiff was noted to have reported complaints of some right hip pain since an injury back in 1995. Nothing in Dr. Miller's notes from this visit indicates that plaintiff reported that his condition was caused or aggravated by the 2006 Event.
21. On October 12, 2006, plaintiff presented to Dr. Shawn Hocker of Atlantic Orthopedics. In his notes from this visit, Dr. Hocker stated that plaintiff reported that he has had an eleven year history of right hip pain and has no recall of any specific trauma to his right hip. Also on this date, Dr. Hocker completed an insurance form in which he stated that plaintiff's hip condition arose in 1995 and made no mention of any event since then which re-aggravated plaintiff's condition.
22. Dr. Hocker testified that his notes from plaintiff's October 12, 2006, visit were likely dictated almost immediately after meeting with plaintiff when the information was fresh in his mind. Furthermore, Dr. Hocker testified that it is his practice to typically start any new patient complaint with "take me back to when you would consider said body part normal and walk me up to speed." Despite this instruction, Dr. Hocker testified that he had an independent recollection of plaintiff denying that his hip condition was the result of any specific trauma and instead reporting that it was something that happened after multiple repetitive tasks operating heavy machinery. *Page 7 
23. On November 17, 2006, plaintiff returned to Dr. Hocker. Nothing in any note from this visit suggests that plaintiff reported that his hip or back condition was connected to the 2006 event. Dr. Hocker once again testified that his notes from this visit were made at or near the time of his examination of plaintiff and stated that it was his practice to include in his notes anything of significance.
24. On December 28, 2006, plaintiff once again presented to Dr. Hocker, who, in the body of his note from this visit, once again made no mention of plaintiff reporting his hip or back condition being in any way related to the 2006 Event. Although the "Work Instructions" section of the note from this visit lists the date of plaintiff's injury as June 1, 2006, Dr. Hocker testified that this portion of the note was written by his medical assistant and was not dictated by Dr. Hocker. Dr. Hocker further advised that he has no knowledge of where his medical assistant received that date and admitted that it could have been a mistake on the part of his medical assistant to list that particular date.
25. On January 17, 2007, plaintiff returned to Dr. Miller. Nothing in Dr. Miller's notes from this visit indicates that plaintiff reported that his hip or back condition was related to the 2006 Event.
26. On January 31 and March 7, 2007, plaintiff visited Dr. Liguori. Nothing in Dr. Liguori's notes from either of these two visits suggests that plaintiff reported that his hip or back pain was in any way connected to the 2006 Event. Dr. Liguori testified that his notes from these two visits were likely dictated immediately after meeting with plaintiff when the information was fresh in his mind.
27. Plaintiff's employment with defendant was terminated in June 2007 for plaintiff's failure to comply with defendant's company policies. *Page 8 
28. Dr. Hocker testified that he agreed with plaintiff's counsel's statement that, if the Industrial Commission finds plaintiff to be credible and believes his testimony regarding his alleged injuries arising from the 2006 Event, it is more probable than not that the 2006 Event caused plaintiff's hip pain. Dr. Hocker, however, later testified to a reasonable degree of medical certainty that if the Industrial Commission finds that the medical records entered into evidence in this matter show that plaintiff complained of the same or similar hip and back pain from 1995 through 2007, plaintiff's pain was more likely the result of a chronic ongoing condition that never resolved rather than the result of a specific event, such as the 2006 Event. Furthermore, Dr. Hocker testified to a reasonable degree of medical certainty that if the Industrial Commission does not find plaintiff's account of the alleged injuries he sustained in the 2006 Event to be credible, then plaintiff's hip pain was the result of a longer-term, chronic condition rather than the result of the 2006 Event.
29. Dr. Liguori testified that he agreed with plaintiff's counsel's statement that if the Industrial Commission were to find plaintiff credible and believe plaintiff's statement concerning his injuries allegedly arising out of the 2006 Event, then it is more likely than not that the 2006 Event caused plaintiff's hip and back pain. Dr. Liguori, however, later testified to a reasonable degree of medical certainty that if the Industrial Commission finds that plaintiff failed to report the 2006 Event during eighteen separate physicians' visits spanning ten months, that it is not possible for Dr. Liguori to offer an opinion as to what caused the injuries complained of by plaintiff. Dr. Liguori further testified to a reasonable degree of medical certainty that if the Industrial Commission does not find plaintiff's account of the alleged injuries he sustained in the 2006 Event to be credible, then plaintiff's condition is more likely than not solely attributable to the 1995 Incident. *Page 9 
30. In addition, Dr. Liguori testified that on August 2, 2006, he had given plaintiff an injection to relieve his pain and, although plaintiff originally stated that the injection did not help relieve his pain, plaintiff later admitted that the injection gave him complete relief for approximately one week.
31. Christopher Branco, a chiropractor at Oleander Chiropractic, testified that plaintiff's back pain was likely caused by plaintiff's hip problems, which Mr. Branco attributed to the 2006 Event. On cross-examination, however, Mr. Branco conceded that he would be surprised if plaintiff had visited physicians on eighteen different occasions over a ten month period following the 2006 Event and had never once mentioned anything regarding the 2006 Event. Mr. Branco further admitted that he took at face value everything reported to him by plaintiff and that plaintiff had retained an attorney to represent him in connection with the 2006 Event by the time Mr. Branco first examined him in April 2007. Mr. Branco also stated that he would not defer to the opinion of Dr. Hocker or Dr. Liguori regarding the cause of plaintiff's back pain.
32. In addition, Mr. Branco testified that he did not have a medical degree and had not reviewed any notes made by any of the physicians who had previously treated plaintiff.
33. The totality of the opinion testimony offered by both Dr. Hocker and Dr. Liguori is internally contradictory in that the opinion testimony offered by both physicians on direct examination and the opinion testimony offered by both physicians on cross-examination cannot simultaneously be valid. Similarly, the opinion testimony offered by both Dr. Hocker and Dr. Liguori is based upon factually insufficient premises in that the opinions offered by both physicians on direct examination fail to take into account the eighteen physicians' visits made by plaintiff over approximately ten months during which he did not once mention the 2006 Event or *Page 10 
cite it as a cause or contributing factor of his hip and back pain.
34. In addition to being based upon the same factually insufficient premise as the opinion testimony of Dr. Hocker and Dr. Liguori, the totality of the opinion testimony offered by Branco is also rendered unpersuasive and incompetent by the fact that Branco had not reviewed any notes made by any physician that had previously treated plaintiff, as well as the fact that Branco is not a physician.
35. The Full Commission does not find plaintiff's account of an event occurring in May or June 2006 that caused hip and back pain to be credible. Plaintiff has not shown that his right hip condition or back pain was caused or aggravated by any event occurring in May or June 2006.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not provide written notice to defendant of the 2006 Event until September 25, 2006 when plaintiff filed a Form 18, at least 3 months after the incident occurred. Therefore, for plaintiff to satisfy the notice requirements of N.C. Gen. Stat. § 97-22, plaintiff must prove: (1) that neither defendant nor its agent or representative had notice or knowledge of the alleged accident; or (2) that there was a reasonable excuse for not giving the requisite written notice and (3) defendant was not prejudiced thereby.
2. Plaintiff has failed to satisfy the first prong of N.C. Gen. Stat. § 97-22, in that plaintiff never mentioned to Mr. Hall, Mr. Carroll, or Mr. Skinner that he was injured as a result of the 2006 event, and Mr. Hall never completed an injury report pertaining to the 2006 Event. *Page 11 
Similarly, plaintiff never requested permission from Mr. Hall to seek medical attention from defendant's on-site first aid facility. N.C. Gen. Stat. § 97-22.
3. Plaintiff has failed to satisfy the second prong of N.C. Gen. Stat. § 97-22 in that the eleven year history of right hip pain experienced by plaintiff should have immediately and reasonably provided plaintiff with knowledge that his hip condition had been re-aggravated. This knowledge, in turn, should have reasonably put plaintiff on notice of the nature, seriousness, or probable compensable character of his condition.Lawton v. County of Durham, 85 N.C. App. 589, 355 S.E.2d 158 (1987).
4. Plaintiff has failed to satisfy the third prong of N.C. Gen. Stat. § 97-22, in that, had plaintiff provided notice of the alleged injuries arising from the 2006 Event to defendant, defendant could have provided immediate medical diagnosis and treatment to plaintiff, which may have reduced the need for some of the future medical treatment he received and pinpointed the cause. Instead, plaintiff was not evaluated for the alleged injuries arising out of the 2006 Event until April 2007, which is the date on which plaintiff first stated to a care provider that his hip and back pain was the result of the 2006 event rather than the 1995 Incident. Furthermore, defendant could have immediately begun to investigate plaintiff's claim of injury. Thus, both policy goals that the notice of injury requirement was designed to meet could not be effectuated because of plaintiff's failure to provide immediate notice of his alleged injuries to defendant. Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. Plaintiff's claim for any injuries allegedly arising from the 2006 Event is barred by N.C. Gen. Stat. § 97-22.
6. Plaintiff has failed to show that the injuries to his hip and back allegedly incurred during the 2006 Event constituted either an injury by accident or a specific traumatic incident *Page 12 
arising out of the course and scope of plaintiff's employment with defendant. N.C. Gen. Stat. § 97-2(6).
7. Because defendant denied plaintiff's claim for compensation, plaintiff bears the burden of establishing medical causation. In cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen," only an expert can offer competent opinion evidence regarding the cause of an injury. When such expert testimony is based upon mere speculation and conjecture, however, it is "not sufficiently reliable to qualify as competent evidence on issues of medical causation" and does not serve to "take the case out of the realm of conjecture and remote possibility." Holley v. ACTS, Inc.,357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (internal citations omitted).
8. The opinion testimony offered by Dr. Hocker, Dr. Liguori, and Branco, when taken as a whole, is insufficient to show a proximate causal relationship and is therefore inadequate to prove causation.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v.Hickory Bus. Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000);Chambers v. Transit Management, 360 N.C. 609, 636 S.E.2d 553 (2006). If anything, the testimonies of Dr. Hocker and Dr. Liguori show that plaintiff's pain and complaints are chronic and related to the 1995 Incident.
9. Because plaintiff has failed to present any evidence that he timely filed a claim for compensation in connection with the 1995 Incident or that defendant's last payment of any compensation benefit provided to plaintiff in connection with the 1995 Incident was within two years of the date of the filing of the current claim, any claim by plaintiff for compensation related to the 1995 Incident is time-barred by N.C. Gen. Stat. §§ 97-24, 97-25.1, Rule 408(2) of the Workers' Compensation Rules of the North Carolina Industrial Commission, and N.C. Gen. Stat. *Page 13 
§ 97-24. See Weston v. Sears Roebuck Co., 65 N.C. App. 309,309 S.E.2d 273 (1983) (timely filing a claim for compensation is a condition precedent to the right to compensation; failure to file a claim in a timely fashion works as a jurisdictional bar to the right to receive compensation which cannot be overcome by consent of the parties, waiver, or estoppel).
10. Plaintiff has failed to show the existence of a disability resulting from the 2006 Event in that no physician who wrote plaintiff out of work following the 2006 Event attributed plaintiff's inability to work to the 2006 Event. When plaintiff's physicians did attribute plaintiff's inability to work to a particular event, the event cited by the physicians was the 1995 Incident. Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted).
11. Plaintiff has further failed to establish the existence of a disability in that plaintiff was terminated from his employment with defendant in June 2007 for failing to comply with defendant's company policies. Because plaintiff was terminated for cause, plaintiff has constructively and unjustifiably refused suitable employment and is not entitled to any compensation for so long as the period of refusal continues. N.C. Gen. Stat. § 97-32.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The Plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the 6th day of January 2009.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/________________ BUCK LATTIMORE COMMISSIONER
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1